**Etelbina LOPEZ aka Etelbina Bautista, Tomas Bautista, husband and wife suing for damages to minor, Elizabeth Bautista, per C.C.P. § 376, and suing individually, Plaintiffs,**

v.

**MARTIN LUTHER KING, JR. HOSPITAL, County of Los Angeles; Dr. Arce; Dr. L.A. Nicholas; Dr. A. Ananda; Dr. L. Gonzales, Defendants.**

No. CV 82–4627–ER.

United States District Court, C.D. California.

Feb. 7, 1983.

Manuel Hidalgo, A Law Corp., Los Angeles, Cal., for plaintiffs.

Golman & von Bolschwing, P.C., Sausalito, Cal., Bonne, Jones, Bridges, Mueller & O'Keefe, Los Angeles, Cal., Horvitz & Greines, Encino, Cal., for defendants.

## MEMORANDUM OPINION

RAFEEDIE, District Judge.

This medical malpractice action is brought by the parents of Elizabeth Bautista, now a two-year old child, who was allegedly injured by the negligence of the doctors and staff attending her birth on November 20, 1980. Plaintiffs, Etelbina Lopez aka Etelbina Bautista (the "mother") and Tomas Bautista (referred to collectively as "plaintiffs", or "the parents") contend that the negligence of the defendants in misdiagnosing the mother's pre-delivery condition and in mishandling the delivery process caused the child to suffer permanent brain damage. She is now afflicted with cerebral palsy and severe mental retardation. The case is presently before this Court on defendants' motion to dismiss the complaint under Rule 12(b)(7) Federal Rules of Civil Procedure [1] (all references to Rules are made to the Federal Rules of Civil

---

1. Pursuant to Rule 12(b)(7), the defendant may move to dismiss a complaint for the plaintiffs' failure to properly join a party under Rule 19.

Procedure unless otherwise indicated) and under Rule 12(b)(6) for failure to comply with the California Tort Claims Act filing requirements.

Plaintiffs, both Mexican nationals, have invoked the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332. They seek to recover damages under § 376 of the California Code of Civil Procedure (hereafter § 376).[2] This section gives the parents of an injured minor child the right to recover, *inter alia*, pre-majority special damages for the child's injuries. Elizabeth, born in California and a resident of that state at the time the action was commenced, is not a party to this action, for her joinder would defeat complete diversity. The mother, as Elizabeth's guardian ad litem, has filed suit on her behalf in the Los Angeles Superior Court.[3] In that case, the child is seeking to recover general damages (pain and suffering) and post-majority special damages.

The question before this Court is whether the child, whose injuries form the basis for the parents' action herein, is an indispensable party to this action under Rule 19.[4] For the reasons set forth below, the Court concludes that the injured child is an indispensable party whose joinder would defeat this Court's jurisdiction, and thus this case must be dismissed.

## I

Briefly, the facts alleged are as follows. Plaintiffs are both Mexican nationals, residing at all relevant times in the State of California, County of Los Angeles. On November 19, 1980, Etelbina Bautista entered Martin Luther King, Jr. Hospital ("MLK") as a patient for maternity care and treatment. MLK staff physicians conducted a routine examination of her, found her not to be in labor, and sent her home. She returned the next day, was admitted to the MLK maternity ward, and delivered her child, Elizabeth.

Sometime thereafter, plaintiffs developed reason to believe that the child had been injured during the delivery process, and on December 17, 1980, they consulted an attorney to determine if a cause of action for medical malpractice existed. At that time, both the mother and the baby were receiving medical treatment at a county free clinic, and the nurse at the clinic informed plaintiffs that the baby was doing fine. The attorney's investigation was discontinued, but the baby's condition apparently did not improve. Thus, on April 19, 1982, plaintiffs again consulted an attorney to consider filing a claim against the city.

Pursuant to § 910 of the California Government Code, an administrative claim

---

2. California Code of Civil Procedure, § 376 provides in part,

 The parents of a legitimate unmarried minor child, acting jointly, may maintain an action for injury to such child caused by the wrongful act of neglect of another . . . .

3. Elizabeth Bautista, by and through her Guardian ad Litem, Etelbina Lopez aka Etelbina Bautista v. Martin Luther King Jr. Hospital, et al., No. C424885, Los Angeles County Superior Court.

4. Rule 19 provides,

 (a) Persons to be Joined if Feasible.
 A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest . . . .
 (b) Determination by Court Whenever Joinder Not Feasible.
 If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

was filed with the city on July 9, 1982 for the child by her mother as guardian ad litem. The claim sought five million dollars in damages for injuries sustained by the child as a result of the defendants' failure to provide proper perinatal care in connection with her birth. The claim also noted that the parents were asserting their rights under § 376. The claim was denied on August 10, 1982.[5] Thereafter, this suit was filed by the parents on September 10, 1982, and the child brought suit in the state court on the same day.

Under § 376, the parents of an injured child may bring an action "for injury to such child caused by the wrongful act or neglect of another." Plaintiffs assert that the parents' rights under § 376 are wholly independent of the child's, and that by definition the child has no interest in any litigation based on § 376. They contend that the child has a distinct cause of action for general damages and for post-majority special damages, thus the child is not indispensable to this federal action. Defendants take issue with this "action splitting" and contend that the plaintiffs herein are attempting to manipulate jurisdiction by omitting the child from the federal action. In short, defendants claim that the child has an "interest" in this action that may be impaired if the result in this case is unfavorable to the parents, and that the child must be characterized as indispensable, without whom the federal action should not proceed.

## II

■ Rule 19 provides an analytical framework for the Court in considering the necessity of joinder, and is subdivided into two parts. Subdivision (a) defines those persons who should be joined if at all feasible. If joinder is not feasible, then subdivision (b) is applied to resolve the question of whether the action should proceed without

that party. This is a two-step analysis—the issues involved in the subdivision (b) determination are not reached until the Court determines first whether nonjoinder would, under (a)(1) prevent the Court from according complete relief to the parties present, or under (a)(2), impair the absentee's interest or prejudice the persons already parties by subjecting them to a risk of double or inconsistent obligations. *Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir. 1982).

Compulsory joinder is the exception to the otherwise general policy of allowing the plaintiff to decide who shall be parties to the lawsuit. Rule 19 recognizes that the plaintiff's decision regarding joinder should, in the interests of fairness and judicial economy, be subject to some review by the Court and the other parties. As one court noted, the plaintiff's "right" to control the litigation is, "like all other 'rights', defined by the rights of others." *Schutten v. Shell Oil Co.,* 421 F.2d 869, 873 (5th Cir.1970). Thus, the Court must balance the competing and at times seemingly inconsistent interests that are at stake in any Rule 19 problem. Rule 19 is structured to facilitate that purpose, and has been formulated to avoid circuity of actions thereby promoting judicial economy.

■ To this end, Rule 19 matters should be governed by practical considerations. Indeed, the Rule was amended in 1966 in an attempt to forestall what was developing as a rigid, formalistic approach to compulsory joinder under the old version of the Rule. In one of the most widely cited opinions on Rule 19, the Supreme Court concluded that the current version of the Rule "emphasizes pragmatic considerations . . . of proceeding or dismissing." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 116–117 n. 12, 88 S.Ct. 733, 741 n. 12, 19 L.Ed.2d 936 (1968).[6] Citing the Committee

---

**5.** Under California Government Code § 900 et seq., no claim for damages may be brought against a public entity until such written claims have been presented and have been acted on or deemed rejected by the appropriate administrative agency. *See San Leandro Police Officers*

*Assn. v. City of San Leandro,* 55 Cal.App.3d 553, 127 Cal.Rptr. 856 (1976).

**6.** The Court recognizes that *Provident Tradesmens Bank* was essentially a Rule 19(b) decision. However, the Court does not read Justice Harlan's concern that the Rule be governed by

Reports on the 1966 Amendments, the Court further noted that "there has been undue preoccupation with abstract classifications of rights or obligations as against consideration of the particular consequences of proceeding with the action . . . ." *Id.* at 116, n. 12, 88 S.Ct. 741–42, n. 12. Common sense and realistic appraisals should play the primary role in making Rule 19 determinations. *See Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee,* 662 F.2d 534, 537 (9th Cir.1981) (look to the practical effects of joinder or non-joinder rather than rigid formula); *Gentry v. Smith,* 487 F.2d 571, 579–580 (5th Cir.1973) (pragmatic considerations include granting the maximum effective relief with the minimum expenditure of judicial energy).

### A. *Rule 19(a): The Interest and the Potential Impairment Thereof.*

■ Subdivision (a) of Rule 19 sets forth guidelines for determining who *should* be joined to a particular action. It essentially defines those persons whose joinder is desirable from the standpoint of complete and efficient adjudication. There are no precise criteria for determining whether a non-party should be joined under Rule 19(a). As the Ninth Circuit Court has held, the application of Rule 19 "must turn on the particular circumstances of each case." *Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators of the United States and Canada,* 525 F.2d 1354, 1361 (9th Cir.1975).

■ Under Rule 19(a)(2), the absent party should be joined if he has an interest in the subject of the proceeding which may, as a practical matter, be impaired in his absence, or may leave any person already a party subject to a substantial risk of multiple or inconsistent obligations. What constitutes an "interest relating to the subject of the action" has not been clearly defined, although it has been suggested that this interest requirement be broadly construed in order to require joinder of all condition-

ally necessary parties. *See Hodgson v. School Board, New Kensington Arnold School District,* 56 F.R.D. 393 (W.D.Pa. 1972); 3A J. Moore, *Moore's Federal Practice* ¶ 19.01[5] (2d ed. 1982). The Court concurs in this characterization of the interest requirement, and indeed Rule 19 is structured in a manner that supports such a conclusion. Subdivision (a) is designed to broadly define all those parties that have a bona fide interest in the subject of the litigation. Subdivision (b) is designed, and is better equipped, to make the subtle distinctions between those parties who are only conditionally necessary and those who are truly indispensable.

Plaintiffs contend that as a matter of law, the child has no interest in this proceeding. They allege that under California law, the parents *alone* have a cause of action under § 376 that is distinct and unrelated to the child's rights against the tortfeasor. Indeed, the California courts have held that the right to recover pre-majority earnings and medical expenses for treating the child's injuries "belongs to the parent" under § 376. *See Faitz v. Ruegg,* 114 Cal. App.3d 967, 971, 171 Cal.Rptr. 149 (1981). Plaintiffs claim that because the child has an independent *substantive* right to recover post-majority pecuniary losses and general damages, the child's rights cannot be affected by this litigation. Therefore, the child has no interest in this litigation.

■ Plaintiffs construe the "interest" permitted under Rule 19(a)(2) much too narrowly. The Court recognizes that the alleged interest must be something more than a financial interest or an interest of convenience. However, the Rule does not require a "legal" interest; it merely requires "an interest relating to the subject of the action." Whether this interest exists must be determined from a practical perspective, not through the adoption of strict legal definitions and technicalities. To be sure, the parents' and the child's substantive legal rights differ. However, "the con-

pragmatic considerations to be limited to purely subdivision (b) issues. Instead, all aspects of

joinder problems should be resolved through practical considerations.

cept of substantive severability is no longer the guiding star of the joinder problem." *Schutten v. Shell Oil Co.,* 421 F.2d 869, 874 (5th Cir.1970). Instead, the Court must consider all the relevant circumstances in classifying the interest at stake.

■ Plaintiffs' construction of the interest requirement in this case ignores the practical consequences to the child if the judgment in the federal action is adverse to the parents. Plaintiffs assert that since the child has no legal interest in this litigation, there is no danger that any issues resolved herein will be decided for purposes of the child's state court action. This analysis places the cart before the horse. The relevant inquiry is, if there is a possibility that collateral estoppel will be applied by the California court, then it is axiomatic that the child has an interest in this action. *See, e.g., Acton Co., Inc. v. Bachman Foods, Inc.,* 668 F.2d 76 (1st Cir.1982) (parent corporation held to have an interest under Rule 19(a) in suit by subsidiary due to, *inter alia,* the possibility that a judgment adverse to the subsidiary would collaterally estop the parent corporation in any later proceedings).[7] A brief examination of the state of the law on collateral estoppel in California indicates that there is indeed a real possibility that the child will be precluded from relitigating the issue of the defendants' negligence if the parents were unsuccessful in this action.

■ The doctrine of collateral estoppel bars parties, or those in privity with them, from litigating in a subsequent proceeding on a different cause of action any issue actually litigated, determined, and necessary to the disposition of a former proceeding. *In re Russell,* 12 Cal.3d 229, 233, 115 Cal.Rptr. 511, 524 P.2d 1295 (1974). The application of the doctrine depends on an affirmative answer to three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? *Levy v. Cohen,* 19 Cal.3d 165, 171, 137 Cal.Rptr. 162, 561 P.2d 252 (1977).

■ It is normally easy to dispose of the first two questions. They are matters of law, and require no balancing of interests or consideration of the peculiar facts of the situation. The question of "privity" is the most problematic aspect of this three-part test. First, it should be noted that there is no universal definition of the concept of privity. *See Lynch v. Glass,* 44 Cal.App.3d 943, 947, 119 Cal.Rptr. 139 (1975). The California Supreme Court recently noted that the concept of privity,

" . . . has been expanded . . . to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify the application of the doctrine of collateral estoppel. [citations] . . . [D]ue process requires that the party to be estopped must have an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. [citations] Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation."

*Clemmer v. Hartford Insurance Co.,* 22 Cal.3d 865, 875, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978).

---

7. *See also,* Wright and Miller, Federal Practice and Procedure: Civil § 1604 (1972);

It should be noted that the prejudicial effect of nonjoinder referred to in Rule 19(a)(2) may be practical rather than legal in character . . . . Joinder will be insisted upon if the action might detrimentally affect . . . the absentee's ability . . . to prosecute or defend any subsequent litigation in which he might become involved.

■ In light of the expanded application of privity for purposes of collateral estoppel, it is clear that the child might be barred from relitigating the issue of defendants' negligence in the state court action. Certainly the child is "sufficiently close" to the present proceeding to justify application of the doctrine. The same attorney is litigating both actions. The mother, a party to this action, is the child's guardian ad litem in the state court action. Plaintiffs' claim that the liability issues in the two cases differ is not well founded. For successful recoveries, both actions require the proof of defendants' negligence in connection with the perinatal care of the child. In one California case that considered this issue in a similar situation, the Supreme Court concluded that the child could not relitigate an issue already decided in the former action brought by his mother. *Armstrong v. Armstrong,* 15 Cal.3d 942, 126 Cal.Rptr. 805, 544 P.2d 941 (1976) (children precluded, on the basis of collateral estoppel, from relitigating their father's support obligation when the matter was settled in a prior action brought by the mother). Although *Armstrong* only dealt specifically with retroactive rights, the reasoning found therein has a much broader application.[8]

I note that this Court does not now sit in judgment of whether the parents will or can protect the child's interest through the pursuit of their action herein. The existing potential that the child will be estopped from relitigating important issues critical to her action in the state court satisfies the impairment requirement. The question of whether the parents will adequately litigate the negligence issue in this action arises only in connection with the later determination of the collateral estoppel issue. That issue is not before this Court.[9]

B. *Rule 19(b): The Equity and Good Conscience Test.*

Since the child has an interest in this litigation which may, as a practical matter be impaired in her absence, the Court is required to join her as a party if feasible under Rule 19(b). The sole basis for federal court jurisdiction in this action is diversity of citizenship. The statute conferring diversity has long been interpreted to require complete diversity—opposing parties may not be citizens of the same state. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). It is not disputed that the child is a California citizen whose joinder would destroy diversity jurisdiction. Therefore, it is not feasible to join the child, and the Court must apply the Rule 19(b) equity and good conscience test to determine whether the action should proceed with the parties before it, or should be dismissed.

■ Four factors are found in Rule 19(b) to consider when deciding whether to proceed or dismiss the action.[10] These factors were restated for purposes of clarity and simplicity in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Writing for a unanimous court, Justice Harlan characterized the relevant interests as: (1) plaintiff's opportunity to proceed in an alternative forum; (2) defendant's desire to avoid multiple litigation or inconsistent judgments; (3) prejudice to the absentee; and (4) the interest of the courts and the public in complete, consistent and efficient settlement of controversies. The essence of these criteria is the attempt to balance the

---

**8.** Plaintiffs' argument against the application of collateral estoppel is not persuasive. First, it relies on old law for the proposition that persons are in privity only if the same *legal* right is at stake. Expanding notions of privity belie this outdated conclusion. Plaintiff cites *Ruddock v. Ohls,* 91 Cal.App.3d 271, 154 Cal.Rptr. 87 (1979) to stand for the sweeping proposition that when the minor's prospective rights are involved, he will not be estopped. *Ruddock* is easily distinguishable on public policy grounds since that case involved the issue of paternity,

"the most fundamental right the child possesses." *Id.* at 277–278, 154 Cal.Rptr. 87.

**9.** In light of the conclusion that the child has an interest that may, as a practical matter be impaired, discussion of Rule 19(a)(2)(ii) is unnecessary. The Court notes, that if collateral estoppel were not applied by the state court, there certainly would be a risk of inconsistent judgments.

**10.** *See,* note 4, *supra.*

rights of all those affected by the litigation. As previously noted, the plaintiffs' rights in this regard must be defined in terms of the rights of all others involved.

The first factor militates heavily in favor of dismissal. The Ninth Circuit Court has recently held that the availability of an alternative forum is one of the primary considerations in the Rule 19(b) analysis. *Anrig v. Ringsby United,* 603 F.2d 1319, 1326 (9th Cir.1979). *Accord, Gottlieb v. Vaicek,* 69 F.R.D. 672 (ND Ill.1975) *aff'd,* 544 F.2d 523 (7th Cir.1976) (adequate alternative remedy factor is most important of the four factors stated in the Rule). As one court stated:

> "Of all the pragmatic considerations to be weighed ..., the one that stands out most strikingly in this case is the fact that the plaintiffs have available to them, and in fact have already filed suit in, another forum .... [P]laintiffs are not left without a remedy. They may ... proceed with the suit that has been brought in the [state court] and which presents the same claims against the same defendants."

*Potomac Electric Power Co. v. Babcock & Wilcox Co.,* 54 F.R.D. 486 (D.Md.1972).

■ Plaintiffs certainly have an adequate state forum. Each cause of action brought herein can be joined to the current action pending before the Superior Court thereby enabling one court to dispose of the entire controversy. As Professor Moore notes in this context, "[w]hen the state court remedy is live, the district courts have been slow to deem it inadequate." 3A J. Moore, *Moore's Federal Practice* ¶ 19.07–2[4] (2d ed. 1982). Indeed, in other situations where federal jurisdiction is concurrent with state jurisdiction, the federal courts have become progressively intolerant of parallel litigation in the two court systems. *See* Judge Friendly's comments in *Rosenfeld v. Black,* 445 F.2d 1337, 1341 (2d Cir.1971). This is not a case where plain-

tiffs would be forced to start all over from scratch in the state court—the state action now pending was filed on the same day as this case. Thus, the plaintiffs would not be prejudiced by bringing the entire action in the state court.[11]

The risk that the defendants herein would be subjected to multiple litigation or inconsistent judgments is not only great, but in fact is a reality. Defendants are presently engaged in two lawsuits which derive from the exact same set of facts and require consideration of the same legal issues. Thus, multiple litigation already exists. The defendants have a strong interest in being involved in one action rather than two, and would be better off in a single action where the liability issue will be decided consistently as to all the plaintiffs. *See Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1115 (7th Cir. 1969). Furthermore, if the federal action is not binding on the minor (i.e., the state court concludes that there is no privity between the child and the parents) then the defendants may suffer conflicting obligations. In *Potomac Electric Power Co., supra* at 492, the court noted:

> "[T]here is at the present time a risk that the [plaintiff] could re-litigate the issues presented here, or at a very minimum require the defendants to come into another court and prove that the principles of *res judicata* or collateral estoppel did apply in any subsequent action. If the action were to proceed with all parties named as plaintiffs, this possibility would be effectively removed."

The third factor has been extensively discussed above. An adverse ruling to the parents here may, as a practical matter, impair the child's probability of success in a future proceeding. Plaintiffs have not suggested any feasible method of fashioning relief so that the child's interest will not be affected. Certainly, the damages claims of

---

**11.** Plaintiffs' argument that the state court will not ultimately decide their case for five years is not a compelling ground for this court to exercise jurisdiction in this case. The federal courts cannot become the means by which litigants avoid state court backlog—the solution to that problem lies elsewhere.

the two parties could potentially be segregated. However, the sole issue that will determine the outcome in both cases is whether defendants were negligent, and the doctrine of collateral estoppel will likely preclude reconsideration of that issue once it has been resolved.[12]

 Finally, there is an obvious interest in adjudicating all of the issues in these cases in one single forum. Public policy dictates that in these times of crowded dockets and limited judicial resources, litigants should avoid, if possible, the maintenance of two identical lawsuits in separate forums. The policy interest in avoiding piecemeal litigation is especially strong where, as here, it is evident that the ongoing state court action can adjudicate the entire controversy. *See Evergreen Park Nursing & Convalescent Home, Inc., supra* at 1116. This does not mean that federal courts may absolve themselves from exercising jurisdiction with unbounded discretion in pursuit of "judicial economy." *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In this regard, the Court believes that the words of former Chief Judge Aldrich of the First Circuit are instructive:

> "It is true that the effect of the dismissal of the action is to deny this plaintiff the benefits of diversity jurisdiction, and that it has sometimes been said that federal courts 'will strain hard' to support diversity jurisdiction in the application of Rule 19. [citations omitted] However, we are shown nothing in the case at bar to make us believe that this factor, if important, is as important as relegating the parties to a jurisdiction, the existence of which has not been denied, where full workable and reasonable relief may be granted. This has been the customary result in similar situations, whether the absent [party was] termed indispensable or otherwise."

12. This case cannot be readily analogized to tort actions wherein numerous plaintiffs sue a single tortfeasor. In those cases, joinder is not necessary because absent parties will not be adversely affected by a prior judgment since the various parties are not generally in privity with one another.

*Stevens v. Loomis,* 334 F.2d 775, 778 (1st Cir.1964).

The grounds for dismissal in this case are compelling. Each of the factors set forth above suggests that dismissal of this action is appropriate. In other words, these factors demonstrate the indispensability of the missing child. Plaintiffs should join in the child's state court action and place this entire controversy in a single forum.

II

 To the extent that the second and third causes of action are based on § 376, they are dismissed for the reasons stated above. Although the complaint is difficult to understand, it seems that in Count Two, the plaintiffs are alleging injury to the *mother* as a result of defendants' negligence, and in Count Three, the plaintiffs are stating a cause of action for lack of informed consent. These theories are *not* covered by the terms of § 376, and thus would have to be separately stated on the administrative claim form submitted to the city in order to be pleaded in a subsequent lawsuit. It is clear that a party may not proceed in a lawsuit which was preceded by the appropriate administrative claim on a set of facts or legal theories not stated in the administrative claim. *Connelly v. State of California,* 3 Cal.App.3d 744, 753, 84 Cal. Rptr. 257 (1970).

 Plaintiffs allege that the information they provided in the claim form was adequate to put the defendants on notice of the existence of these causes of action. Section 376 states that "damages may be given as under all of the circumstances of the case may be just", and plaintiffs allege that these theories are "just" and appropriate under § 376. Finally, plaintiffs claim that if any deficiencies existed in their administrative claim, these deficiencies were waived by the defendants due to their fail-

ure to object to them and notify plaintiffs of the omissions.[13]

The problem is not that the administrative claim was "defective" as such—instead, the facts and circumstances relating to the second and third causes of action were not included in the claim whatsoever. Plaintiffs' claim only made reference to the child's injuries. Under the section on the claim form entitled "What injury resulted," the plaintiffs filled in "Severe neurological impairment, cerebral palsy and mental retardation (psycho-motor/retardation)." No mention was made of personal injuries to the mother, nor did the plaintiffs make any allegation of lack of informed consent for the treatment she was given. In *Lopez v. Southern California Permanente Medical Group,* 115 Cal.App.3d 673, 171 Cal.Rptr. 527 (1981), the court considered this issue and held that the trial court properly denied the plaintiff permission to amend his complaint to state a legal theory not included in the administrative claim form. The Court held that "a complaint filed against a public entity which, . . . must be preceded by a claim, may not allege a cause of action not mentioned in the claim . . . ." *Id.* at 677, 171 Cal.Rptr. 527.

Any causes of action for personal injuries to the mother or for lack of informed consent were not mentioned in the administrative claim form. Thus, this Court is without jurisdiction to hear them since the administrative claim filing requirements have not been satisfied. As mentioned above, to the extent these actions are based on § 376, they are dismissed for failure to join the child, an indispensable party.

---

**13.** California Government Code, § 911 provides, in pertinent part,

 Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failing to give notice of insufficiency with respect to such defect or omission . . . .