**Bardomiano AGUILAR & Rosa Aguilar, etc., Plaintiffs-Appellants,**

**v.**

**LOS ANGELES COUNTY, L.A. County/U.S.C. Medical Center, et al., Defendants-Appellees.**

No. 83–6428.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1984.

Decided Jan. 15, 1985.

Ferguson, Circuit Judge, dissented and filed an opinion.

Manuel Hidalgo, Los Angeles, Cal., for plaintiffs-appellants.

Martin Stein, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for defendants-appellees.

Before DUNIWAY, FERGUSON, and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Bardomiano and Rosa Aguilar appeal the dismissal of their medical malpractice action. The district judge based the dismissal on the Aguilars' failure to join an indispensable party, their son Jaime, whose joinder would defeat diversity jurisdiction. We affirm.

FACTS AND PROCEDURAL HISTORY

On August 2, 1983, appellants Rosa and Bardomiano Aguilar filed a medical mal-

practice suit against appellees County of Los Angeles, Los Angeles County/U.S.C. Medical Center, and several medical center employees ("County"). The Aguilars alleged that the County's negligence in providing medical care to their minor child, Jaime, caused him to sustain permanent brain damage. Under California Code of Civil Procedure (C.C.P.) § 376, which provides that parents may maintain an action for injury to their child, the Aguilars sought to recover pre-majority special damages for Jaime's injuries.[1] The Aguilars alleged that they were citizens of Mexico and El Salvador and that the defendants were citizens of California and based the district court's subject matter jurisdiction on diversity of citizenship. Their son Jaime, a California citizen, was not named as a plaintiff in the complaint.

On August 3, 1983, Jaime Aguilar, through his guardian *ad litem*, Rosa Aguilar, filed an action in the Los Angeles Superior Court to recover post-majority special damages and general damages for injuries caused by the County's alleged negligence.

The County moved to dismiss the federal action pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted, and Fed.R.Civ.P. 12(b)(7), failure to join a party under Fed.R.Civ.P. 19. On October 24, 1983, the district court granted the motion to dismiss the complaint and action under Fed.R.Civ.P. 12(b)(7) for failure to join Jaime Aguilar, an indispensable party whose joinder would defeat diversity jurisdiction. Adopting the reasoning in *Lopez v. Martin Luther King, Jr. Hospital*, 97 F.R.D. 24 (C.D.Cal.1983), the court found that Jaime Aguilar claimed an interest relating to the subject of the action and that disposition of the action in his absence could impair or impede his ability to protect that interest under the California law of collateral estoppel. The court also determined under Fed.R.Civ.P. 19(a) [2] that the County would be subject to a substantial risk of incurring inconsistent obligations because of Jaime's claimed interest, should the action continue without his joinder as a party. The court further found that, pursuant to Fed.R.Civ.P. 19(b), the actions and complaint should be dismissed.

## DISCUSSION

Fed.R.Civ.P. 19 establishes a two-step analysis for determining who should be joined in a given action. The first step,

---

1. California Code of Civil Procedure § 376 provides, in relevant part, as follows: "The parents of a legitimate unmarried minor child, acting jointly, may maintain an action for injury to such child caused by the wrongful act or neglect of another."

2. Fed.R.Civ.P. 19 provides, in relevant part, as follows:

    Rule 19. Joinder of Persons Needed for Just Adjudication

    (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

    (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

set forth in subsection (a), determines which persons should be joined, if joinder is feasible. Under Fed.R.Civ.P. 19(a)(2), a person should be joined if he claims an interest relating to the subject of the action and is so situated that disposition in his absence could impair that interest or subject the other parties to multiple or inconsistent liabilities. The second step of the Rule 19 analysis, set forth in subdivision (b), determines whether the action should be dismissed or proceed without the party if joinder is not feasible. Subsection (b) does not apply until the subsection (a) determinations are made. *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982).

This case turns on a Fed.R.Civ.P. 19(a)(2) determination whether Jaime has an interest in the subject of this action that could be impaired—and, if so, whether the action should have been dismissed under Fed.R. Civ.P. 19(b).

### I.

*Jaime Aguilar's Interest and Its Impairment; Fed.R.Civ.P. 19(a)(2)*

■ The district court concluded that Jaime Aguilar had an interest in his parents' action that could be impaired under the California law of collateral estoppel. While Fed.R.Civ.P. 19 cases are generally reviewed under an abuse of discretion standard, *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982), to the extent that the determination of Jaime's interest and its impairment under Fed.R.Civ.P. 19(a)(2) involved an interpretation of California collateral estoppel law, it is reviewed under a *de novo* standard. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984).

■ The doctrine of collateral estoppel, as interpreted in California law, bars parties, or those in privity with them, from relitigating any issue actually litigated, determined, and necessary to the disposition of a former proceeding. *In re Russell*, 12 Cal.3d 229, 233, 115 Cal.Rptr. 511, 513, 524 P.2d 1295, 1297 (1974). Application of the collateral estoppel doctrine thus depends on an affirmative answer to three questions: (1) was the issue decided in the prior adjudication identical to the one presented in the action in question? (2) was there a final judgment on the merits? (3) was the party against whom the doctrine is asserted a party or in privity with a party to the prior adjudication? *Levy v. Cohen*, 19 Cal.3d 165, 171, 137 Cal.Rptr. 162, 166, 561 P.2d 252, 256 (1977).

■ Fed.R.Civ.P. 19(a)(2) states that a person should be joined if disposition of the action in his absence *may* as a practical matter impair or impede his ability to protect that interest. Although Jaime seeks to recover different damages (post-majority) from that of his parents (pre-majority), his right to recovery, like his parents', depends on a determination of the County's negligence. If his parents' suit is allowed to proceed, and the County is found nonnegligent, Jaime may be collaterally estopped from relitigating the issue of the County's negligence. Since a California court may find Jaime collaterally estopped from pursuing his own suit in state court, the district court here properly found him to have an interest in his parents' action that could be impaired if that action goes forward without him as a party.

The Aguilars contend that the district court erred. They maintain that the collateral estoppel doctrine is inapplicable here because Jaime is not in privity with them. Privity, they argue, "involves a person so identified in interest with another that he represents the same legal right." *Zaragosa v. Craven*, 33 Cal.2d 315, 318, 202 P.2d 73, 76 (1949); *State Farm Ins. Co. v. Salazar*, 155 Cal.App.2d 861, 865, 318 P.2d 210 (1957). The Aguilars contend that C.C.P. § 376 gives them a distinct and independent cause of action from Jaime's, and that they are therefore not in privity with Jaime.

As support for their position, the Aguilars rely on *Cortez v. County of Los Angeles*, 96 F.R.D. 427 (C.D.Cal.1983). *Cortez* involved a dismissal for non-joinder of an indispensable party in a fact situation identical to the one now before this court, and

identical to that in *Lopez v. Martin Luther King, Jr. Hospital,* 97 F.R.D. 24 (C.D.Cal. 1983), the case the district court followed. In *Cortez,* the court refused to dismiss the parents' medical malpractice action based on diversity of citizenship for failure to join their injured son and concluded that the child had no legally protected interest in his parents' lawsuit. Like the Aguilars, the *Cortez* parents sued for pre-majority damages in federal court and the son sued for post-majority damages in state court. The court reasoned that the child would not be collaterally estopped from obtaining relief in state court because he and his parents asserted distinct legal rights to recovery and were therefore not in privity.

■ We affirm the district court's choice of the reasoning in *Lopez v. Martin Luther King, Jr. Hospital,* 97 F.R.D. 24 (C.D. Cal.1983), rather than that in *Cortez v. County of Los Angeles,* 96 F.R.D. 427 (C.D.Cal.1983). *Lopez* properly construed the Rule 19(a)(2) "interest" requirement as not limited to a "legal" interest, but one to "be determined from a practical perspective, not through the adoption of strict legal definitions and technicalities." *Lopez,* 97 F.R.D. 24, 29 (C.D.Cal.1983). This reasoning is supported by ample authority. See *Provident Tradesmen's Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968); *Kaplan v. International Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1361 (9th Cir.1975); *Smith v. State Farm Fire & Casualty Co.,* 633 F.2d 401, 405 (5th Cir.1980). The Aguilars' approach, which emphasizes the distinct legal causes of action asserted by parents and child, focuses on legal technicalities and runs contrary to the prevailing view that "interest" under Rule 19 should be determined from a practical, and not technical, perspective.

The Aguilars also rely on *Kaiser Foundation Hospital v. Superior Court,* 254 Cal.App.2d 327, 62 Cal.Rptr. 330 (1967). *Kaiser* involved the collateral estoppel effect of a prior judgment on a subsequent suit brought against the same hospital. A husband and wife had sued defendant hospital for injuries caused to the wife and judgment was rendered for the hospital. After the wife's death, the husband and daughter brought a wrongful death action against the same hospital. The court held that because the daughter had a distinct cause of action, she was not in privity with a party to the first action and could not be collaterally estopped, though the husband could not sue again. *Kaiser,* 254 Cal. App.2d 327, 333, 62 Cal.Rptr. 330, 333 (1967).

*Kaiser,* however, reflects outdated notions of privity under the California law of collateral estoppel. The concept of privity "has been expanded ... to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify the application of the doctrine of collateral estoppel." *Lopez,* 97 F.R.D. 24, 30 (C.D. Cal.1983); *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 875, 151 Cal.Rptr. 285, 289, 587 P.2d 1098, 1102 (1978). *Lynch v. Glass,* 44 Cal.App.3d 943, 948, 119 Cal. Rptr. 139, 143 (1975). For example, the California Supreme Court has applied the collateral estoppel doctrine to prevent children from relitigating an issue decided in a previous action brought by their mother. *Armstrong v. Armstrong,* 15 Cal.3d 942, 126 Cal.Rptr. 805, 544 P.2d 941 (1976). As in *Armstrong,* a California court could well apply the collateral estoppel doctrine to bar Jaime's suit if his parents' suit is allowed to proceed and proves unsuccessful, since the underlying issue of the County's negligence is identical in both suits. *See Zaragosa v. Craven,* 33 Cal.2d 315, 202 P.2d 73 (1949) (fact that parties have different causes of action is immaterial, since underlying issue of liability is identical to both parties).

■ The Aguilars assert that *Armstrong* involved only retroactive rights and not the prospective rights involved here, and that *Ruddock v. Ohls,* 91 Cal.App.3d 271, 154 Cal.Rptr. 87 (1979), prevents application of the collateral estoppel doctrine when the prospective rights of a minor are involved. In *Ruddock,* the court held that

children were not collaterally estopped from relitigating the issue of paternity, although non-paternity had been established in a prior marital dissolution suit. *Id.* at 286, 154 Cal.Rptr. 87. However, *Ruddock* is distinguishable since it involved paternity, which the court described as "the most fundamental right the child possesses." *Id.* at 277–78, 154 Cal.Rptr. 87. Moreover, a California court could ignore this prospective/retrospective distinction and apply the *Armstrong* court's reasoning to collaterally estop Jaime from pursuing his state action. Rule 19 speaks to *possible* harm, not only to certain harm.

We conclude that Jaime should have been joined in his parents' action because under Fed.R.Civ.P. 19(a)(2), he has an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may impair or impede his ability to protect that interest.

### II.

### *The Equity and Good Conscience Test Under Rule 19(b)*

Since the district court properly determined that Jaime, having an interest in the subject of his parents' action that could be impaired under California collateral estoppel law, should therefore be joined, if feasible, it was appropriate for the court to turn to Rule 19(b). Since Jaime could not be joined without destroying diversity jurisdiction, the district court dismissed the action rather than allow it to proceed without joinder.

■ The district court's dismissal for failure to join an indispensable party under Fed.R.Civ.P. 19 is reviewed under an abuse of discretion standard. *Walsh v. Centeio,* 692 F.2d 1239, 1241 (9th Cir.1982); *Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982). The Aguilars are incorrect in their assertion that the district court's dismissal of their actions and complaint amounted to a summary judgment that is reviewable *de novo.*

■ The district court had adequate grounds to find that each of the factors in

Rule 19(b), which represent an attempt to balance the rights of all those affected by the litigation, mandated dismissal in this case. The Aguilars have an adequate alternative forum, state court, in which they can obtain relief. By having to defend two separate lawsuits turning on the same issues, the County would be subjected to multiple litigation and possibly inconsistent obligations. There is potential prejudice to Jaime, since he could be collaterally estopped from pursuing his state action if his parents' suit is allowed to proceed and is unsuccessful. In light of these facts, the district court did not abuse its discretion in dismissing the action.

### CONCLUSION

The district court correctly dismissed the action for non-joinder under Fed.R.Civ.P. 19.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

The majority reasons that because Jaime *may* be collaterally estopped, this is sufficient to uphold the district court's finding Jaime has an interest in his parents' action which could be impaired if that action goes forward without him as a party. I dissent.

I believe the majority, in adopting the reasoning in *Lopez v. Martin Luther King, Jr. Hospital,* 97 F.R.D. 24 (C.D.Cal.1983), has put the cart before the horse. In *Lopez,* the district court stated what was believed to be the relevant inquiry as follows: "[I]f there is a possibility that collateral estoppel will be applied by the California court, then it is axiomatic that the child has an interest in this action." 97 F.R.D. at 30.

The majority in this case employed this exact reasoning, finding that this "interest" determination is properly construed " 'from a practical perspective, not through the adoption of strict legal definitions and technicalities.' " (Opinion at p. 182, citing *Lopez v. Martin Luther King, Jr. Hospital,* 97 F.R.D. at 29).

While the question of joinder is one of federal procedure, in diversity cases the

standards must be applied to the rights and interests that are derived from and defined by state law. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968). In this case, section 376 of the California Code of Civil Procedure provides the Aguilars with a separate and independent cause of action from that asserted by Jaime in state court. *Faitz v. Ruegg*, 114 Cal.App.3d 967, 971, 171 Cal. Rptr. 149, 150 (1981) (right to recover for loss of child's earnings and for medical expenses incurred in treating its injuries belongs to parent).

To be sure, Jaime has an obvious financial stake in the outcome of his parents' action, but this cannot support the legally protected "interest" required to invoke Rule 19(a). *See* 3A *Moore's Federal Practice* ¶ 19.07–1[2], at 19–129 (2d ed. 1982). "It is a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable, who are not essential for just adjudication and who have a separate cause of action entirely." *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982). Thus, the majority has used inverse reasoning to find Jaime's legally protected "interest" in the instant action from mere speculation that collateral estoppel might be applied in Jaime's separate state court action.

Even assuming Jaime has the required interest in his parents' action, Rule 19(a) is satisfied only if the disposition of the action in his absence would either (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

This court concludes that "[s]ince a California court may find Jaime collaterally estopped from pursuing his own suit in state court, the district court here properly found him to have an interest in his parents' action that could be impaired if that action goes forward without him as a party." To the contrary, I agree with both the holding and reasoning of Judge Cynthia Holcomb Hall's decision in *Cortez v. County of Los Angeles*, 96 F.R.D. 427 (C.D.Cal. 1983). Like *Lopez*, the facts in *Cortez* were identical to those present here. Judge Hall found the minor child in that case "could not be collaterally estopped by his parents' litigation of their distinct legal right to recovery." 96 F.R.D. at 429.

Here, the application of Rule 19 requires inquiry into the effect on Jaime of any relief granted to his parents, and whether "as a practical matter" such may "impair or impede his ability to protect his interest."

> The language "as a practical matter" has a restrictive as well as an expansive side. Thus, the fact that the absent person may be bound by the judgment does not of itself require his joinder if his interests are fully represented by parties present, and the mere theoretical possibility of prejudice does not require joinder.

3A *Moore's Federal Practice*, ¶ 19.07–1[2.–1], at 19–133 (2d ed. 1982) (footnotes omitted). As pointed out by Judge Hall, these parents, like those in *Cortez*, have every incentive to reach a result that will benefit their child's legal interest as well as their own. This is not a case where one party may do something to affect wrongfully the rights of a nonparty. All inferences point to the fact that these parents will vigorously do all they can to protect their child and make every argument Jaime would or could make if he were a party. Indeed, Rosa Aguilar is the appointed guardian ad litem in Jaime's state court action, charged with the responsibility to litigate that case in Jaime's best interests. To presume Jaime's interest will be prejudiced if this action is allowed to proceed without him as a party flies in the face of common sense and recognized familial bonds.

In applying Rule 19 "courts must refrain from taking a view either too broad or too narrow in determining 'prejudicial' effect of a judgment. The watchwords of Rule 19 are 'pragmatism' and 'practicality.' " *Schutten v. Shell Oil Co.*, 421 F.2d 869,

874 (5th Cir.1970). "Rather the courts are urged to consider whether the absentee would be 'adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor?'" *Gottlieb v. Vaicek,* 69 F.R.D. 672, 675 (N.D.Ill.1975), *aff'd,* 544 F.2d 523 (7th Cir.1976).

The second prong of the Rule 19(a) inquiry would require Jaime's joinder if his absence would leave any of the parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations. Following the reasoning of Judge Hall in *Cortez* and as set forth above, there is no risk of double or multiple liability to defendants in this case because Jaime's parents claim damages under their independent cause of action established by section 376 of the California Code of Civil Procedure. Thus, I conclude Jaime is not a person who should be joined in this action and, therefore, an analysis of whether the equities of the case require dismissal pursuant to Rule 19(b) is unnecessary.

I would adopt the decision of Judge Hall in *Cortez v. County of Los Angeles,* 96 F.R.D. 427 (C.D.Cal.1983), and reverse the district court and remand for further proceedings.