400 S.E.2d 816

**Debra Lyn GLOVER, Individually, and Debra Lyn Glover, Next Friend of Darren Glover, a Minor Child**

v.

**Honorable Steven D. NARICK, Judge of the Circuit Court of Wetzel County, James M. Simpkins, and Dolly J. Beagle.**

No. 19717.

Supreme Court of Appeals of West Virginia.

Nov. 13, 1990.

Dissenting Opinion of Chief Justice Neely Jan. 10, 1991.

Terence M. Gurley, Patrick S. Casey, Schrader, Stamp, Byrd, Byrum & Companion, Wheeling, for Debra Lyn Glover.

Daniel A. Ruley, Jr., Diana Everett, Parkersburg, for James M. Simpkins and Dolly J. Beagle.

MILLER, Justice:

In this original proceeding in prohibition, we are asked to determine whether the Circuit Court of Wetzel County exceeded its legitimate powers in ordering petitioner Darren Glover, an infant, to be joined as a party in a civil action brought by his mother, petitioner Debra Lyn Glover. We grant the writ of prohibition.

The petitioners were injured on April 25, 1987, as the result of an automobile accident in Wetzel County in which a vehicle owned by Dolly J. Beagle and driven by her son, James M. Simpkins, collided with the Glover car, driven by Debra and in which Darren was a passenger. On April 24, 1989, Debra Glover filed suit in the Circuit Court of Wetzel County against Mr. Simpkins and Mrs. Beagle to recover damages for the personal injuries and property damage she suffered as a result of the accident. Debra also sought to recover for the medical expenses she incurred in the treatment of Darren's injuries and for her loss of his services and consortium. No action was brought on behalf of Darren, who was eleven years old at the time of the accident.

On January 7, 1990, the defendants below filed a motion to compel the addition of Darren as a party to his mother's civil action. After hearing the arguments of the parties, the circuit court, by order dated April 11, 1990, granted the motion. The petitioners subsequently instituted this proceeding in prohibition to prevent Darren's joinder.

The key question in this proceeding is whether Darren is subject to compulsory joinder under Rule 19(a) of the West Virgi-

nia Rules of Civil Procedure.[1] This rule, which is substantially similar to Rule 19(a) of the Federal Rules of Civil Procedure, premises the decision to require or excuse joinder of an absent person on the desirability of doing so under the facts and circumstances of each particular case.[2]

We have recognized a two-pronged test for determining the applicability of Rule 19. In *Wachter v. Dostert*, 172 W.Va. 93, 96, 303 S.E.2d 731, 734–35 (1983), we quoted the following language from *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship & Training Committee*, 662 F.2d 534, 537 (9th Cir. 1981), *cert. denied*, 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982):

> " 'Rule 19 requires two separate inquiries. First, are there persons who should be joined, either because their own interests or the interests of the parties might be harmed by their absence? Such persons, referred to as "necessary parties," must be joined if feasible. Fed.R.Civ.P. 19(a). Second, if parties determined to be necessary

under rule 19(a) cannot be joined, should the action in "equity and good conscience" be dismissed? Only if the court determines that the action should be dismissed is the absent party labelled "indispensable." Fed.R.Civ.P. 19(b); *see English v. Seaboard Coast Line Railroad*, 465 F.2d 43, 48 (5th Cir.1972).' "

We are concerned only with the first prong of this inquiry.[3]

In the Syllabus of *Wachter v. Dostert, supra*, we summarized the guidelines set forth in Rule 19(a) for determining whether a nonparty is a person whose joinder should be compelled:

> "Rule 19(a) of the West Virginia Rules of Civil Procedure requires two general inquiries for joinder of a person who is subject to service of process. First, is his presence necessary to give complete relief to those already parties? Second, does he have a claim that, if he is not joined, will be impaired or will his nonjoinder result in subjecting the existing parties to a

---

1. Rule 19(a) provides:

   "(a) *Persons to be joined if feasible.*—A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."

   Rule 19(b) governs what should be done if a person should be joined under Rule 19(a), but cannot be made a party. Rule 19(c) requires a pleading to assert the names of persons who should be joined and the reasons for nonjoinder. Under Rule 19(d), the compulsory joinder provisions of Rule 19 are subject to the provisions of Rule 23 relating to class actions.

2. Prior to 1966, the question of compulsory joinder under Federal Rule 19 focused on whether the absent person could be classified as a "necessary" or "indispensable" party. In recognition of the inflexibility of this approach, the rule was amended to place more emphasis on the practical considerations underlying the decision to compel joinder. As we observed in *Wachter v. Dostert*, 172 W.Va. 93, 95, 303 S.E.2d 731, 734 (1983):

   "[T]here has been a shift in emphasis by the federal courts since the 1966 Amendments to the federal rule. The test has become less scholastic in the sense of trying to define who is an indispensable party. Instead, under the amended rule, the emphasis is placed on the question of whether the case can be equitably prosecuted in the absence of a missing party. If so, there is no reason to join the party or to dismiss the action."

   In 1987, the federal rule was again amended to make it gender neutral.

   In 1978, Rule 19 of the West Virginia Rules of Civil Procedure was amended to conform with the 1966 amendments to the federal rule. *Capitol Fuels, Inc. v. Clark Equip. Co.*, 176 W.Va. 277, 342 S.E.2d 245 (1986); *Wachter v. Dostert, supra*; *Anderson v. McDonald*, 170 W.Va. 56, 289 S.E.2d 729 (1982).

3. There is no dispute that Darren is amenable to the jurisdiction of the circuit court. Rule 19(b) is, therefore, of no concern in this appeal.

substantial risk of multiple or inconsistent obligations? If the absent person meets the foregoing test, his joinder is required. However, in the event that the absent person cannot be joined, the suit should be dismissed only if the court concludes that the 19(b) criteria cannot be met."

*Accord Capitol Fuels, Inc. v. Clark Equip. Co.,* 176 W.Va. 277, 281, 342 S.E.2d 245, 248 (1986)

It has been stated that under the federal rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 227 (1966). (Footnote omitted). It has also been stated, however:

"There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). Underlying policies include plaintiff's right to decide whom he shall sue, avoiding multiple litigation, providing the parties with complete and effective relief in a single action, protecting the absentee, and fairness to the other party. The determination is heavily influenced by the facts and circumstances of each case." *Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982).

In *Bakia,* the Ninth Circuit went on to state that "[i]t is a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable, who are not essential for just adjudication and who have a separate cause of action entirely." 687 F.2d at 301. In *Cortez v. County of Los Angeles,* 96 F.R.D. 427, 428–29 (C.D. Cal.1983), the district court, relying on *Bakia,* made this statement:

"As a general matter, Rule 19 does not necessitate the joinder of plaintiffs advancing tort claims against the same defendant for injuries arising out of the same transaction or occurrences. *See, e.g., Field v. Volkswagenwerk AG,* 626 F.2d 293, 299 (3d Cir.1980);

*Pan American World Airways, Inc. v. United States District Court,* 523 F.2d 1073, 1078 (9th Cir.1975); 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1623, at 245 (1972). This rule is applicable where the potential co-plaintiffs are related by blood or marriage, providing that each has a separate, independent cause of action. *Sove v. Smith,* 311 F.2d 5 (6th Cir. 1962); *Wright v. Schebler Co.,* 37 F.R.D. 319 (S.D.Iowa 1965)."

*Accord Troutman v. Ollis,* 134 Mich.App. 332, 351 N.W.2d 301 (1984).

The facts in this case seem to fall directly within the rule stated in *Cortez.* It is generally recognized that a personal injury to a minor child gives rise to two causes of action: (1) an action on behalf of the child for pain and suffering, permanent injury, and impairment of earning capacity after majority; and (2) an action by the parent for consequential damages, including the loss of services and earnings during minority and expenses incurred for necessary medical treatment for the child's injuries. *See Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974); *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964); *Barker v. Saunders,* 116 W.Va. 548, 182 S.E. 289 (1935); *Cook v. Virginian Ry. Co.,* 97 W.Va. 420, 125 S.E. 106 (1924). *See generally* 59 Am.Jur.2d *Parent & Child* § 97 (1987); 67A C.J.S. *Parent & Child* § 137 (1978). Although it is based upon and arises out of the negligence causing injury to the child, the parent's right of action for consequential damages is separate and distinct from the child's right of action for his or her injuries. *See Alabama Farm Bureau Mut. Casualty Ins. Co. v. Williams,* 365 So.2d 315 (Ala.Civ. App.1978); *Welter v. Curry,* 260 Ark. 287, 539 S.W.2d 264 (1976); *Macku v. Drackett Prods. Co.,* 216 Neb. 176, 343 N.W.2d 58 (1984); *Orr v. Orr,* 36 N.J. 236, 176 A.2d 241, 91 A.L.R.2d 906 (1961); *Independent School Dist. I–29 v. Crawford,* 688 P.2d 1291 (Okla.1984). *See generally* 59 Am. Jur.2d *Parent & Child* § 97; 67A C.J.S. *Parent & Child* § 138; Annot., 32 A.L. R.2d 1060 (1953). Thus, Debra's action for

consequential damages is separate from Darren's claim for his injuries.

■ The defendants, however, contend that Darren's joinder is mandated under Rule 19(a)(1), which requires joinder where, in the absence of the person whose joinder is sought, "complete relief cannot be accorded among those already parties." This provision is directed at the perspective of those who are already parties to the litigation to determine whether complete relief can be accorded among them. The Third Circuit pointed this out in *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980), quoting from 3A J. Moore, *Moore's Federal Practice* ¶ 19.07–1[2] at 19–128 (1979):

> "Complete relief under Rule 19(a)(1) 'refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought, and mere theoretical considerations of disposing of the whole controversy should not be employed' to dismiss an action 'where it appears unlikely that absent persons could be adversely affected.'" (Footnote omitted).

*Accord United States v. County of Arlington*, 669 F.2d 925 (4th Cir.), *cert. denied*, 459 U.S. 801, 103 S.Ct. 23, 74 L.Ed.2d 39 (1982). According to the Notes of the Advisory Committee, this provision

> "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter."

*See* 3A J. Moore, *Moore's Federal Practice* ¶ 19.07–1[1] (1989).

■ We fail to see how the absence of Darren from Debra's lawsuit prevents the existing parties from completely resolving Debra's separate claims against the defendants. The action below was one for money damages. As we have already indicated, Debra's cause of action is separate and distinct from Darren's. At the conclusion of the proceedings below, there will be no possibility of further litigation on Debra's claims. While the defendants will still be subject to an action brought by Darren, their liability in that regard is entirely severable from their liability to Debra for the same acts.

This same conclusion was reached by the Michigan Court of Appeals in *Troutman v. Ollis, supra,* in circumstances similar to those presented here. The Troutmans were involved in an automobile accident in which their son, Scott, allegedly suffered prenatal injuries. When Mr. and Mrs. Troutman sued the owner and driver of the other vehicle involved in the accident, the defendants moved to add Scott as a party, asserting that they could not obtain complete relief in the pending litigation without the inclusion of Scott's claim. The court rejected this assertion, holding that the joinder requirement

> "is not met in a case in which the only relief sought is a money judgment. The proof of his damages is individual to Scott; the liability of the defendants is several to the plaintiffs.... It is clear that, while Scott may be permitted to join the action as a plaintiff, he should not be compelled to join the action as a necessary party plaintiff." 134 Mich.App. at 340, 351 N.W.2d at 305.

*See also Abel v. American Art Analog, Inc.,* 838 F.2d 691 (3d Cir.1988); *Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305 (5th Cir. 1986); *United States v. County of Arlington, supra; Field v. Volkswagenwerk AG, supra; Bedel v. Thompson,* 103 F.R.D. 78 (S.D.Ohio 1984).

Based on the foregoing, we believe that Debra and the defendants can obtain complete relief in the civil action below without joining Darren as a party. Accordingly, we find no authority for compelling his joinder under Rule 19(a)(1).

■ The defendants also contend that joinder of Darren is mandated under Rule 19(a)(2). This provision emphasizes the interest of the person whose joinder is sought and focuses on whether an adjudication in the absence of such person will prejudice his rights or those of the parties.

If an adjudication in the absence of a person claiming such an interest will "as a practical matter impair or impede his ability to protect that interest," or if the non-joinder of such person would "leave any of the persons already parties subject to the risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest," joinder is mandatory under Rule 19(a)(2).

The defendants cite *Aguilar v. Los Angeles County*, 751 F.2d 1089 (9th Cir.), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985), as authority for the proposition that Darren has such an interest in Debra's litigation. In *Aguilar*, the parents of a child who suffered brain damage, allegedly as a result of negligent medical care, brought a malpractice suit in federal court to recover pre-majority damages. The parents did not name their son as a plaintiff in the federal court action, but, instead, brought an action on the child's behalf in the California state courts. The district court dismissed the federal action on the ground that the child was an indispensable party whose joinder would defeat diversity jurisdiction.[4]

On appeal, a divided Court of Appeals affirmed the district court's ruling. The majority found that the child had an interest in his parents' action because recovery in both instances depended on a finding of negligence on the part of the defendants. The majority concluded that under the California law of collateral estoppel an adverse ruling on that issue in the parents' federal court action might well be held to preclude

the child from relitigating the issue in state court. As a consequence, the Ninth Circuit held in *Aguilar* that the district court had properly found the child to have an interest in his parents' suit which could be impaired if the federal court action went forward without him as a party and that his joinder was, therefore, mandatory under Rule 19(a)(2)(i).

The dissenting opinion pointed out that a California statute granted the parents a right of action separate and independent from the child's right to recover for his injuries. The dissent also noted that in *Cortez v. County of Los Angeles*, *supra*, the district court had earlier concluded that under California law, collateral estoppel would *not* preclude a similarly situated child from relitigating the issue of negligence in a subsequent state court proceeding.[5] This led the dissent to conclude that while the child "has an obvious financial stake in the outcome of his parents' action, ... this cannot support the legally protected 'interest' required to invoke Rule 19(a). *See* 3A *Moore's Federal Practice* ¶ 19.07–1[2], at 19–129 (2d ed. 1982)." 751 F.2d at 1095.

■ We agree with the reasoning of the dissent because it comports with our law on collateral estoppel. In *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983), we discussed the doctrine of collateral estoppel at length[6] and recognized that it cannot be applied against a stranger to the prior action. As we stated in Syllabus Point 8:

> "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:
> 'But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.*' *Lane v. Williams*, 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965)."

4. The parents were citizens of Mexico. The defendants and the child were citizens of California.

5. Prior to the decision in *Aguilar*, the federal district courts were divided on whether the child's action would be barred by collateral estoppel. *Compare Cortez v. County of Los Angeles*, *supra*, *with Lopez v. Martin Luther King, Jr. Hospital*, 97 F.R.D. 24 (C.D.Cal.1983). Although the court in *Aguilar* disagreed with the district judge's conclusions as to the applicability of collateral estoppel in *Cortez*, the Ninth Circuit did not reject any other principles enunciated by the district court.

6. In Syllabus Point 2 of *Conley*, we offered the following overview of the doctrine:

"A fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim."

We did recognize, however, that the doctrine may be applied to one "who is not a party to the original action ... if such person is in privity with a party to the earlier litigation." 171 W.Va. at 594, 301 S.E.2d at 226.

The facts in *Conley* are similar to those in this case. Mrs. Conley and her minor daughter were injured in an explosion and fire. Mr. and Mrs. Conley brought suit on behalf of the child to recover for the child's injuries.[7] The jury returned a verdict against some of the defendants while finding the others not liable. Mr. and Mrs. Conley subsequently instituted an action to recover for Mrs. Conley's injuries and for Mr. Conley's claims for loss of consortium and medical expenses incurred on behalf of his wife. Those defendants who had prevailed in the prior lawsuit asserted collateral estoppel as a defense to the second action.

In *Conley*, 171 W.Va. at 594–595, 301 S.E.2d at 226, we held that the mere fact that the plaintiffs had appeared in the prior litigation as representatives of the interests of the minor child did not preclude them from proceeding upon their own claims against the same defendants:

"Cases as well as the Restatement demonstrate that the privity doctrine does not apply when a person sues in a representative capacity, and then brings his own individual cause of action even though it arises from the same transaction. This is summarized in Paragraph 2 of Section 36 of the Restatement (Second) of Judgments (1982):

" 'A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.' " (Citations omitted; footnote omitted).[8]

It is generally agreed that for collateral estoppel purposes, privity does not typically arise from the relationship of parent and child. *Sayre v. Crews*, 184 F.2d 723 (5th Cir.1950); *Gorski v. Deering*, 465 N.E.2d 759 (Ind.App.1984); *Arsenault v. Carrier*, 390 A.2d 1048 (Me.1978); *Whitehead v. General Tel. Co.*, 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10 (1969); *Smittle v. Eberle*, 353 P.2d 121 (Okla.1960); *Richburg v. Baughman*, 290 S.C. 431, 351 S.E.2d 164 (1986); *Commonwealth v. Johnson*, 7 Va.App. 614, 376 S.E.2d 787 (1989). Thus, it has been held that a judgment against a parent in an action for loss of a minor's services does not preclude a subsequent action by or on behalf of the minor to recover for the minor's personal injuries. *York v. Northern Hosp. Dist. of Surrey County*, 96 N.C.App. 456, 386 S.E.2d 99 (1989), *review denied*, 326 N.C. 601, 393 S.E.2d 892 (1990); *Whitehead v. General Tel. Co., supra*. *See generally* Note, *Privity, Preclusion, and the Parent–Child Relationship*, 1977 B.Y.U.L.Rev. 612 (1977); Annot., 41 A.L.R.3d 536 (1972). And in Syllabus Point 3 of *Galanos v. National Steel Corp.*, 178 W.Va. 193, 358 S.E.2d 452 (1987), we held:

---

**7.** This proceeding was the subject of the lawsuit in *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975).

**8.** In *Galanos v. National Steel Corp.*, 178 W.Va. 193, 195–96, 358 S.E.2d 452, 454–55 (1987), we recognized those circumstances in which this rule would not apply:

"[A] nonparty is bound by a prior judgment where he actively participated in and exercised control over the conduct of the prior litigation. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Ger-*

*rard v. Larsen*, 517 F.2d 1127 (8th Cir.1975). Estoppel may also be invoked where a nonparty impliedly consents to abide by a prior judgment. *Boyd v. Jamaica Plain Co-Operative Bank*, 7 Mass.App. 153, 386 N.E.2d 775 (1979). Finally, if a nonparty's actions involve deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment, he may be deemed to be bound by such judgment. *E.g., Crane v. Comm'r*, 602 F.Supp. 280 (D.Me. 1985); *Katz v. Blum*, 460 F.Supp. 1222 (S.D.N.Y.1978), *aff'd*, 603 F.2d 213 (2d Cir.1979)." None of these circumstances are alleged here.

"Mere involvement in a common accident, without more, does not create a privity relationship among the participants for purposes of collateral estoppel."

From the foregoing, we must conclude that collateral estoppel would not bar Darren's claim for damages in the event of an adverse jury verdict in Debra's action. The defendants cite no other interest of Darren's in the litigation which would be impaired or impeded by an adjudication in his absence. Accordingly, we find no ground for mandatory joinder of Darren under Rule 19(a)(2)(i).

Finally, the defendants contend that failure to join Darren will submit them to multiple litigation in violation of Rule 19(a)(2)(ii).

Even if we were to conclude that Darren has a sufficient interest in his mother's claim to warrant further inquiry under the Rule, we do not believe the possibility of further litigation against a defendant by one not a party to the pending action is, of itself, sufficient grounds to compel joinder of the absent person under Rule 19(a)(2)(ii). The Notes of the Advisory Committee state that this provision "recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent *liability*." (Emphasis added). *See* J. Reed, *Compulsory Joinder of Parties in Civil Actions*, 55 Mich.L.Rev. 327 (1957).

Rule 19(a)(2)(ii) is designed to require joinder where the failure to join would expose the defendant to the possibility of double or multiple recovery on the same claim. *See* 3A J. Moore, *supra* ¶ 19.07–1[2.–2] at 113–14. Thus, for example, under Rule 19(a)(2)(ii) one who has a claim upon a bank account must be joined in an action by other claimants to the account because nonjoinder could result in multiple litigation which would subject the bank to the possibility of liability to all claimants in excess of the amount in the bank account. *See Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667 (2d

Cir.1982); *United States v. Wyoming Nat'l Bank of Caspar*, 505 F.2d 1064 (10th Cir.1974). *See also In Re Midwest Milk Monopolization Litigation*, 730 F.2d 528 (8th Cir.), *cert. denied sub nom., Illinois v. Associated Milk Producers, Inc.*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984) (vertical conspiracy in anti-trust context).

On the other hand, where nonjoinder of an absentee might result in multiple litigation on separate claims, but not multiple recovery on the same claim, Rule 19(a)(2)(ii) does not require joinder. Thus, where an insured brings suit to collect on an insurance policy after the insurer refuses to pay, joinder of the insured's subrogee is not mandated because the insurer's obligation is limited to the amount of the policy. *See Kelly v. Commercial Union Ins. Co.*, 709 F.2d 973 (5th Cir.1983); *Smith v. State Farm Fire & Casualty Co.*, 633 F.2d 401 (5th Cir.1980). *See also Boone v. General Motors Acceptance Corp.*, 682 F.2d 552 (5th Cir.1982); *Mazon v. Camden Fire Ins. Ass'n*, 182 W.Va. 532, 389 S.E.2d 743 (1990).

Here, subsequent litigation between Darren and the defendants would not expose the defendants to the risk of a double recovery. Darren's cause of action is separate and distinct from his mother's, and his damages are entirely different. A recovery by both Debra and Darren would not force the defendants to pay twice for the same injury; instead, each plaintiff would have one complete recovery for the wrong done to him or to her. In such circumstances, we do not believe Rule 19(a)(2)(ii) compels joinder of Darren as a party. *See Boone v. General Motors Acceptance Corp., supra; General Inv. Co. of Conn. v. Ackerman*, 37 F.R.D. 38 (S.D.N.Y.1964).

Nor does the possibility that the defendants could be found negligent in one action and not negligent in the other subject them to the risk of inconsistent obligations within the meaning of Rule 19(a)(2)(ii). As one commentator has noted:

"The possibility of adjudications that are inconsistent merely as a matter of logic does not trigger the application of Rule

19(a)(2)(ii). Thus when several persons are injured by the same tort and proof of damage is individual, the fact that want of an estoppel may leave a defendant who has defended successfully against one of the injured parties with the risk that he will be liable to another in a subsequent suit does not make it necessary that all the putative plaintiffs be joined in the same suit, even if there is no jurisdictional inhibition to their joinder." 3A J. Moore, *supra* ¶ 19.07–1[2.–2] at 19–123 to 19–124, *citing Field v. Volkswagenwerk AG, supra.* (Footnotes omitted).

This analysis was adopted in *Bedel v. Thompson,* 103 F.R.D. at 81:

"Even though the results … may be, to a certain extent, logically inconsistent, Rule 19 does not speak of inconsistent 'results.' Rather, it speaks in terms of inconsistent 'obligations.' As pointed out, defendant's scenario does not result in subjecting the defendant to inconsistent obligations, but instead imposes the consequences of inconsistent results. *See* 3A Moore's *Federal Practice and Procedure,* 1907–1[2–2]."

█ In sum, then, the mere fact that nonjoinder of one not a party to a pending lawsuit will expose a party to the risk of further litigation, which may result in inconsistent verdicts, will not necessarily require joinder of the nonparty under Rule 19(a)(2)(ii). There must be some showing that the party subject to additional litigation is faced with inconsistent obligations. There is no such showing here. Accordingly, we find no grounds for compelling Darren's joinder under Rule 19(a)(2)(ii) in this case.

█ Finally, the defendants assert, and we recognize, the public policy favoring economy of judicial effort and costs in multiple litigation of claims arising from the same transaction. However, Rule 19(a) does not expressly state that judicial economy is a factor. Moreover, we have not found any substantial authority which holds that, in the absence of any of the factors set out in Rule 19(a), a nonparty who asserts a separate cause of action should be joined solely on the basis of judicial economy.[9]

█ Thus, judicial economy is not a broom by which a person having a separate cause of action may be swept into pending litigation. If none of the other criteria of Rule 19(a) have been met, judicial economy alone is not sufficient to require compulsory joinder.[10] To hold otherwise would destroy the distinction between permissive joinder under Rule 20 and compulsory joinder under Rule 19. This distinction was summarized by the court in *Field,* 626 F.2d at 299:

"Joinder of parties falling within the circumstances contemplated by Rule 20 is *required* only when the person in question comes within the scope of compulsory joinder as prescribed by Rule 19. In contrast to Rule 20, under which proper parties *may* be joined in certain circumstances because of a common interest in a question of law or fact, even though they have no substantive right to compel joinder, Rule 19 refers only to those parties who *should* be joined because they are either necessary or indispensable parties to the litigation. Rule 19 thus embodies the more limited purpose of 'bring[ing] before the court all persons whose joinder would be desirable for a just adjudication of the action.'" (Emphasis in original; footnote omitted).[11]

**9.** *Davila Mendez v. Vatican Shrimp Co.,* 43 F.R.D. 294 (S.D.Tex.1966), decided shortly after the 1966 revisions to Rule 19 of the Federal Rules of Civil Procedure, suggests judicial economy as the basis for joinder, but also speaks of avoiding multiplicity of suits. It gives only a cursory analysis of Rule 19 and cites no cases.

**10.** Professor Freer in *Rethinking Compulsory Joinder: A Proposal to Restructure Federal Rule 19,* 60 N.Y.U.L.Rev. 1061 (1985), argues that the public interest in judicial economy factor does not come into play unless there is initially found to be an adverse impact on the parties or the absent person. He concludes that this factor is irrelevant.

**11.** The *Field* court quoted from 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1604 at 32 (1972).

*See* 3A J. Moore, *supra* ¶ 19.01–1[5.–5] at 19–31 to 19–32; 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 1604 (1986).

■■■ The petitioners also contend that Rule 19(a) is in conflict with W.Va.Code, 55–2–15 (1923), the general savings statute applying to persons under a disability. The statute tolls the running of the statute of limitations in an infant's personal injury action until two years after the infant attains majority.[12] The petitioners argue that forcing Darren to join in Debra's lawsuit would, in effect, nullify his "right" under the statute not to bring suit until his twentieth birthday.

We believe the petitioners misconstrue the statute. W.Va.Code, 55–2–15, is a savings statute. Its purpose is to prevent the statute of limitations from running against a person who is under a disability and who, therefore, has little or no access to the courts. *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153 (Tex.Civ.App.1980). It is designed to mitigate the difficulties of preparing and maintaining a civil suit while the plaintiff is under a disability. *Lewis v. Shuck*, 5 Kan.App.2d 649, 623 P.2d 520 (1981). It grants no additional rights to such persons, but merely prevents the statute of limitations from running against them until their disabilities have been removed. *Christy v. Schwartz*, 49 Wis.2d 760, 183 N.W.2d 81 (1971). Consequently, we find no inherent inconsistency between the compulsory joinder provisions of Rule 19 and the general savings statute, W.Va. Code, 55–2–15. *See Troutman v. Ollis, supra.*

As a final matter, the defendants contend that a writ of prohibition is not an appropriate remedy in this case. It is generally recognized that the determination as to whether joinder of an absent person is required under Rule 19(a) is a matter within the sound discretion of the trial court.

*National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). *See Dixon v. American Indus. Leasing Co.*, 157 W.Va. 735, 205 S.E.2d 4 (1974). In Syllabus Point 2 of *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977), we stated:

"A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W.Va.Code*, 53–1–1."

*See also Conley v. Spillers, supra; State ex rel. Maynard v. Bronson*, 167 W.Va. 35, 277 S.E.2d 718 (1981); *State ex rel. Heck's, Inc. v. Gates*, 149 W.Va. 421, 141 S.E.2d 369 (1965).

■■■ However, in Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), we also recognized:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

■■■ We believe the petitioners here have demonstrated that Darren's joinder is not mandated under the provisions of Rule 19. This case poses a novel and clear-cut legal issue within the confines of *Hinkle v. Black*. Consequently, we conclude that the

---

12. W.Va.Code, 55–2–15, provides:

"If any person to whom the right accrues to bring any such personal action, suit or scire facias, or any such bill to repeal a grant, shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgment as is mentioned in section eight [§ 55–2–8] of this article, except that it shall in no case be brought after twenty years from the time when the right accrues."

circuit court acted in excess of its jurisdiction in ordering joinder.

We, therefore, issue a writ of prohibition against the enforcement of the circuit court's order requiring joinder.

Writ awarded.

NEELY, Chief Justice, dissenting:

In this case a mother has sued a motorist for: (1) injuries she sustained in an automobile accident; (2) medical expenses related to the injuries of her minor child in the same accident; and, (3) the mother's loss of the child's services and consortium. The trial court held that under Rule 19(a) *W. Va. R. Civ.P.*, the child must be joined as a party so that all issues relating to the liability of the defendant can be litigated in the same proceeding. The majority reverses, and for the reasons set forth below I respectfully dissent.

The effect of the majority's decision is that the identical issue of the defendant's liability can now be litigated twice—in this case and then again later in an action brought by the child or on the child's behalf many years hence. Under the majority's analysis, the child may sue in a subsequent action to recover damages for a chipped tooth and several stitches, even if a jury decides now that the defendant is not liable for the child's injuries.

Notwithstanding the majority's citation to sixty-four assorted cases (which could not have been more incisively selected if a Westlaw computer had been attached to a random number generator), the foundation of the majority's analysis are: (1) an overruled federal trial court opinion;[1] (2) a dissent that objects to a pragmatic reading of Rule 19;[2] and (3) two West Virginia cases that clearly are not on point.[3] The ultimate logic of today's decision would allow a myriad of separate lawsuits to arise from a single injury to one person.[4]

*Aguilar v. Los Angeles County, supra*, note 2, held that Rule 19(a) requires joinder of the medical malpractice claims of a minor child and the claims of the child's parents for pre-majority special damagers arising out of the same alleged malpractice. In so holding, the Ninth Circuit overruled (the court used the weasel language "declined to follow") *Cortez v. County of Los Angeles, supra*, note 1, and rejected the argument that the parents and child possessed distinct legal interests arising from the child's injuries. The court held that the close familial relationship between parents and child must be seen as the type of privity that compels joinder of claims arising from the same operative facts. The Court of Appeals stated:

"The Aguilar's approach, which emphasizes the distinct legal causes of action asserted by parents and child, focus-

1. *Cortez v. County of Los Angeles,* 96 F.R.D. 427 (C.D.Cal.1983.)

2. *Aguilar v. Los Angeles County,* 751 F.2d 1089 (9th Cir.), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

3. *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983); *Galanos v. National Steel Corp.,* 178 W.Va. 193, 358 S.E.2d 452 (1987).

4. Also, carried to its logical conclusion, today's decision would permit six children of the same mother injured simultaneously in the same accident to bring six separate lawsuits against a defendant driver for their own injuries—even after a jury had concluded in their mother's lawsuit that the mother was 100 percent at fault. Consider too, the situation where divorced parents of an injured child may, under our decision today, sue in separate actions—one to recover for the medical expenses of the child, and the other to recover for loss of services and consor-

tium. Criticism of this type of overkill has been severe. *See* R. Freer, *Avoiding Duplicative Litigation: Rethinking plaintiff Autonomy and the Court's Role In Defining the Litigative Unit,* 50 U.Pitt L.Rev. 809 (1989) arguing that:

"[m]ultiplicity is a harm to society's legitimate interest in judicial efficiency. Courts are a public resource, providing publicly financed resolution of private disputes. We pay for them, and we have a right to insist that their services not be squandered. What was acceptable in an earlier day has simply become untenable in an era of spiraling attorney's fees and increasing delays between filing and trial. The duplication of effort is the major cause of the protraction of time needed to resolve cases and cannot be justified by plaintiffs' selfish strategic desire to sue separately."

Professor Freer's argument is broader than necessary to decide the present case, but the point is well taken that at some point, duplication of litigation must be limited, and clearly that point is reached in the case before us.

es on strict legal technicalities and runs contrary to the prevailing view that "interest" under Rule 19 should be determined from a practical, and not technical, perspective."

*Aguilar, supra,* note 2, at p. 1093. Our majority's decision today relies on the hypertechnical view of Rule 19 espoused by the *Aguilar dissent* and the overruled *Cortez.*[5] Central to the majority's reliance on the *Aguilar* dissent was *Aguilar's* treatment, in the majority's opinion, of the doctrine of collateral estoppel. The majority in *Aguilar* noted that:

> "... the California Supreme Court has applied the collateral estoppel doctrine to prevent children from relitigating an issue decided in a previous action brought by their mother ... [a] California court could well apply the collateral estoppel doctrine to bar [the child's] suit if his parent's suit is allowed to proceed and proves unsuccessful, since the underlying issue of the County's negligence is identical in both suits." [citations omitted].

*Aguilar* at p. 1093. In the case before us, our majority feels compelled to "agree with the reasoning of the dissent because it comports with our law on collateral estoppel."

Thus, in addition to its hypertechnical reading of Rule 19, the majority now compounds its error by misconstruing the law of collateral estoppel in West Virginia.

Contrary to what the majority implies, we have never held that privity does not arise from the relationship of parent and child. The only two West Virginia cases that the majority cite to support their view miss the mark entirely. *Galanos v. National Steel Corp. supra,* note 3, rejected a collateral estoppel argument where *unrelated* plaintiffs in *separate* actions had no kinship or privity with one another except that each plaintiff was injured in the same explosion.[6]

The majority further suggest that *Conley v. Spillers, supra,* note 3, supports its view that collateral estoppel does not apply in this case. *Conley,* at best, asserts that the doctrine of privity does not *necessarily* apply to estop collaterally those persons who have previously litigated an issue in a *representative* capacity. In the case before us, however, the mother has filed suit to recover damages on her own behalf. There is no issue of representative capacity; clearly *Conley* is distinguishable and cries out to be distinguished.[7]

---

**5.** Using decisional law this way gives a whole new and wonderfully creative dimension to archaic notions like "authority" and "stare decisis."

**6.** The majority quotes *Galanos* as holding that "mere involvement in a common accident, without more, does not create a privity relationship among the participants for purposes of collateral estoppel." Although this may be true, it is not relevant to cases where there is more than "mere involvement"—such as the close familial relationship of parents and minor child combined with issues of damages that arise *only* by virtue of such relationship.

**7.** It should also be noted that although the plaintiffs in *Conley* and the prior action (*Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975)) were blood relatives, the causes of action in each case arose out of injuries to *different people,* not injuries to the same person, as in the case at bar. The mother's cause of action is derivative of her child's injuries. Moreover, the majority neglects to recognize that *Conley* addresses the related problem of plaintiffs' avoiding joinder and using collateral estoppel as a sword:

> "Courts have recognized that it is possible for a plaintiff to deliberately avoid consolida-

tion or joinder in an earlier suit where there are common questions of law and fact in order to wait and see how a fellow plaintiff's suit is decided.

If the first suit is successful then the plaintiff can seek to utilize its judgment by way of collateral estoppel in his suit. If the first suit is unsuccessful, since he was not a party to that suit the judgment cannot be asserted against him by the defendant. Because one of the purposes underlying the collateral estoppel doctrine is to limit repetitive litigation and encourage joinder courts have concluded that a plaintiff may be denied collateral estoppel benefits if he cannot advance a substantial reason why he did not join in the original litigation."

*Conley* 171 W.Va. at 592, 301 S.E.2d at p. 223. Further, syllabus point 2 of *Conley* states (in relevant part):

> Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit.

It seems obvious that *Conley,* far from supporting the majority opinion, actually contradicts it.

Interestingly enough, the majority's opinion may already be limited to the facts of this case.[8] In *Phyllis Belcher and Stephanie L. Belcher v. Sherry L. Goins,* 184 W.Va. 395, 400 S.E.2d 830 (1990), a decision filed a month after the majority decision in this case,[9] syllabus point 5 states:

> "A claim for parental consortium ordinarily must be joined with the injured parent's action against the alleged tortfeasor."

Although the facts in the case before us are reversed from *Belcher* (in the sense that the damages claimed in the case before us are the loss of consortium and services of the parent related to injuries of the child), the principle is exactly the same; syllabus point 5 of *Belcher* should be the rule in this case, and the fact that it is not is precisely my complaint.

*Belcher* was a case in which the child's loss of consortium was dependent on the parent's injuries. It is indeed odd that the same members of the majority who concurred with syllabus point 5 of *Belcher* also agreed to syllabus point 4 in the case before us. Syllabus point 4 of the case before us states:

> "Although [the parent's action for damages related to the child's injuries] is based upon and arises out of the negligence causing injury to the child, the parent's right of action for consequential damages is separate and distinct from the child's right of action for his or her injuries."

Furthermore, to add insult to injury, footnote 7 of *Belcher* cites the case before us and states, "We, like other courts recognizing the claim in question, adopt [the approach of requiring joinder of the minor child' parental consortium claim with the injured parent's claim] as a *fair and prac-*

*tical solution,* not because Rule 19(a) of the *W.Va.R. of Civ.P.* would *technically* require such joinder." [emphasis added]. Of course, as already noted, four members of this same majority rejected the language of *Aguilar,* which states, "that 'interest' under Rule 19 should be determined from a practical, not technical, perspective."

---

**8.** Indeed, the entirely context specific case that tempers the wind for the shorn lamb on a one-time basis but does not go on to do further, extensive damage is an old and honored tradition in our jurisprudence. *See,* The 'King's Case', *Tres ancien coutumier.* ed. Tardif, p. 13. The 'King's Case' emerges from the infamous taking of the English throne by Prince John upon the death of Richard Coeur de Lion, to the exclusion of Richard's son Arthur. For many years thereafter English courts declined to decide whether an eldest son of a deceased father could evict an uncle in possession of his father's estate. See Pollack & Maitland, *History of English Law,* Vol. 1, p. 514.

**9.** The decision in *Belcher* was filed a month *after* the majority opinion in the case at bar, but due to a difference in filing deadlines for majority and dissenting opinions in this Court, the majority opinion in *Belcher* was filed while this dissent was being researched and written.