441 S.E.2d 658

STATE of West Virginia ex rel. CSR LIMITED, Petitioner,

v.

Honorable A. Andrew MacQUEEN, III, Judge of the Circuit Court of Kanawha County, Clifford Bostic, Raymond Daugherty, Clark Dillon, Andrew Gray, James Harper, Donald Horstman, Herbert Riggs, Robert Shannon, Charles Skiles, Dewey Turley, Orville Windle, Walter Uttermohlan, et al., Respondents.

No. 21994.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1994.

Decided Feb. 17, 1994.

Concurring Opinion of Justice Miller April 1, 1994.

Paul M. Friedberg, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, James McLaughlin, Morgantown, for petitioner.

Scott S. Segal, Segal & Davis, Charleston, Ronald P. Motley, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Arthur R. Miller, Cambridge, MA, for respondents.

NEELY, Justice:

CSR Limited (hereinafter "CSR") is a new and unique type of defendant in that black hole of litigation—consolidated asbestos cases. Between 1948 and 1966 CSR was sales agent for its partially-owned subsidiary that mined raw asbestos fibers. The raw asbestos fibers were sold F.O.B. Freemantle, Australia and other ports in Western Australia to Johns Manville Corporation which then delivered them to the United States. Because Johns Manville had its own mines and purchased asbestos fibers from several other mines throughout the world, Johns Manville received only a small portion of its asbestos fibers from CSR.

CSR maintains that once it ceased as sales agent for its partially-owned subsidiary, it had no influence, control or even substantive knowledge concerning the use and distribution of the asbestos fibers. According to CSR, neither CSR nor any of its subsidiaries have been engaged in the manufacturing, processing, importing, conversion, and selling of, or otherwise involved with asbestos-containing products in the United States.

Based on these contentions, CSR, alleging lack of personal jurisdiction, moved to dismiss the complaints filed against it in a consolidated asbestos case known as Mass III in the Circuit Court of Kanawha County. Chief Judge A. Andrew MacQueen denied CSR's motion to dismiss the complaints. CSR then sought a rule to show cause in prohibition to challenge Judge MacQueen's ruling on jurisdiction.

The plaintiffs below (respondents here) assert that CSR mined substantial quantities of crocidolite asbestos (commonly known as "blue fiber") and sold this asbestos in the United States exclusively to Johns Manville, one of the world's largest manufacturers of asbestos products. Johns Manville in turn sold products containing CSR's asbestos throughout the United States. According to the plaintiffs-respondents, CSR's involvement extended far beyond mining and delivering the asbestos fibers FOB the dock in Australia in blissful ignorance of the fibers' final destination.

Specifically, the plaintiffs-respondents contend that CSR sought to exploit the American market for raw asbestos by systematically and continuously selling substantial quantities (37,000 tons) of crocidolite asbestos to Johns Manville between 1948 and 1966. CSR's own sales records, plaintiffs-respondents argue, show that CSR shipped fiber to ports in various states. Notably, CSR does not contest jurisdiction in the states to which the fiber then was routed—specifically, Johns Manville plants located in Louisiana, New Jersey, Illinois, Texas and California.[1]

■ In short, the plaintiffs-respondents assert that the evidence below establishes or will establish the following: CSR representatives had a vital interest in Johns Manville's manufacture and distribution of CSR's raw asbestos in the United States; CSR actively pursued sales to Johns Manville and other manufacturers of building materials for the United States market; CSR frequently visited Johns Manville to obtain information about the products Johns Manville was manufacturing with its asbestos; and CSR played an active role in Manville's product development to encourage use of its blue crocidolite fiber. In the thick of all this activity, the plaintiffs-respondents contend, CSR could not conceivably have been unaware that its asbestos was being used in products widely distributed by Johns Manville throughout all of the United States including, obviously, West Virginia.

At oral argument, it became apparent that CSR has confused jurisdictional issues with questions of CSR's innocence of wrongdoing. In a nutshell, CSR argues that as simply a manufacturer of raw materials, it is not liable to the plaintiffs in this mass tort case. Unlike a manufacturer of a defective component part that caused some end product to fail, CSR contends its role was more comparable to a manufacturer of raw steel, with no control over the end product into which its raw material was incorporated.

■ This Court, however, is satisfied that CSR introduced a product into the stream of American commerce that it knew would be used in West Virginia. "Personal jurisdiction 'premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause' and can be exercised without the need to show additional conduct by the defendant aimed at the forum state." *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987); Syllabus Point 2, *Hill by Hill v. Showa Denko, K.K.,* 188 W.Va. 654, 425 S.E.2d 609 (1992).

That CSR, as it readily concedes, is currently being sued in asbestos cases in the State of Mississippi where its contacts are roughly the same as they are in West Virginia dramatizes the stickiness of the problem inherent in attempting to peel questions of jurisdiction from liability issues. We are not unsympathetic to CSR's plight: it is subject to suit in all fifty states and a determination in one state that, on the merits, CSR is not liable because it manufactured only raw materials and had no knowledge that its raw materials were being used in a dangerous way will, nonetheless, not be binding in any other jurisdiction.

■ If for a moment, however, we assume that the plaintiffs-respondents are able to prove that CSR was part of a scheme to profit through the sale of a product known to be dangerous, then, having declined to assert jurisdiction, Mississippi plaintiffs (and plaintiffs in such other states as may accede to jurisdiction) will ravish whatever insurance fund CSR has available to pay injured plaintiffs at the expense of West Virginia plaintiffs. *See Blankenship v. General Motors,*

---

1. We note that CSR made these representations at oral argument.

185 W.Va. 350, 406 S.E.2d 781 (1991). Accordingly, we hold today that in determining whether our courts have jurisdiction under the stream of commerce theory articulated in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the rule in West Virginia will always be congruent with the outer edge of the due process envelope that, as determined by the Supreme Court of the United States, circumscribes jurisdiction. Thus, whenever there are "such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice," Syllabus Point 1, in part, *Hodge v. Sands Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966); Syllabus Point 1, in part, *Hill by Hill v. Showa Denko, K.K., supra*, the courts of this State will assert jurisdiction.

Obviously, as the Supreme Court of the United States held in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980), jurisdiction cannot be asserted over a defendant with which a state has no contacts, no ties and no relations. However, in the case before us, the evidence is virtually incontrovertible that CSR introduced its asbestos fibers into the stream of American commerce; CSR knew the products containing their fibers would be distributed throughout the United States; CSR had an ongoing commercial relationship with Johns Manville, the largest American manufacturer of asbestos products; and, CSR was actively engaged in the development and introduction of products that contained their raw materials. These circumstances are sufficient at this time to give our courts jurisdiction.

Accordingly, the writ of prohibition for which petitioner prays is denied.

Writ denied.

MILLER, J., concurs and files a concurring opinion.

MILLER, Justice, concurring:

(Filed April 1, 1994)

Initially, I voted to grant this proceeding for a writ of prohibition based on the petition of CSR Limited. CSR represented there were no facts that would establish personal jurisdiction over it in the Circuit Court of Kanawha County. It relied, in part, on the principles announced in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). We followed *Asahi Metal* in *Hill by Hill v. Showa Denko, K.K.*, 188 W.Va. 654, 425 S.E.2d 609 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993), where we stated in Syllabus Point 2:

"Personal jurisdiction 'premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause' and can be exercised without the need to show additional conduct by the defendant aimed at the forum state. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987)."

Contrary to the United States Supreme Court's conclusion in *Asahi Metal*, we found in *Showa Denko* sufficient contact under the stream of commerce theory to warrant personal jurisdiction in West Virginia courts. A procedural point common to both cases and which bears emphasizing is that both appeals had a developed factual record on the jurisdictional issue.

In this case, when the matter was fully argued, it was apparent that neither side could agree as to what could constitute the factual record. We were given three transcripts of hearings before the trial court and appendices with attached documents designed to bolster each party's factual claims. When it denied the motion to dismiss, the circuit court made no findings of fact.[1]

The underlying civil action is a mass asbestosis proceeding which involves some eighty corporate defendants. The initial hearing on

---

1. My remarks as to the proceedings before the circuit court are not meant in any manner as a condemnation of his actions. The circuit court judge decided the motion to dismiss in a conscientious fashion. He was fully aware, I am sure, that as the evidence developed at trial, he might determine there was not sufficient personal jurisdiction and CSR could be dismissed. The true mistake was ours in granting the petition seeking a writ of prohibition without realizing the obvious, that there would be disputed facts on the personal jurisdiction issue.

the lack of personal jurisdiction occurred on November 9, 1993. Plaintiffs' counsel admitted that he had misunderstood the nature of the hearing and was not prepared to argue the jurisdictional issue.

At the next hearing on November 15, 1993, the plaintiffs apparently tendered a variety of materials harvested from discovery or exhibits in other asbestosis cases. This material included a recent Mississippi case where the personal jurisdiction issue was raised unsuccessfully by CSR. The nature of this material is not identified with any particularity in the hearing transcripts. After hearing arguments by the attorneys, the circuit court advised it would go over the material and issue a ruling the next day. The following day, CSR's motion to dismiss was denied with the circuit court emphasizing Syllabus Point 2 of *Showa Denko, supra.*

Despite the majority's attempt to frame facts that will support its conclusion, I am convinced that many of the facts are in serious dispute by the parties. My ultimate conclusion is that a writ of prohibition is unavailable on this type of issue, even under the liberal standard first enunciated in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

> "In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way *to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts* and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." (Emphasis added).

2. CSR's adverse ruling on its motion to dismiss does not constitute a final order under Rule 54 of the West Virginia Rules of Civil Procedure. Thus, after an adverse judgment on the merits,

*See also* Syllabus Point 6, *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993); Syllabus Point 12, *Glover v. Narick,* 184 W.Va. 381, 400 S.E.2d 816 (1990).

It certainly cannot be said in this case that there was a clear legal error that could be resolved independently of any disputed facts. The entire question of personal jurisdiction was a factual one surrounded by disputed facts.

Consequently, while I agree that the writ of prohibition should be denied, I do not agree with the majority's substantive holding, as I believe it is not supported by the facts. I would dismiss the writ on the procedural ground that it does not meet the *Hinkle* test. It is for this reason that I concur.[2]

CSR may appeal and raise its personal jurisdiction issue. The right to appeal is another reason for not initially granting prohibition.