No. 19-1006 – *State of West Virginia ex rel. Surnaik Holdings of WV, LLC v. The Honorable Thomas A. Bedell, et al.*

**FILED**

**November 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Hutchison, Justice, concurring:**

The majority opinion emphasizes, repeatedly, that a circuit judge weighing a motion under Rule 23 must conduct a "thorough analysis" that gives "careful consideration" to each factor set forth in the rule. I do not believe that this is something new for circuit judges, but it is certainly something with which I must concur.

I write separately because the majority opinion fails to carefully explain the predominance and superiority requirements of Rule 23(b)(3), and it might be perceived by readers as "result oriented."[1] Readers might even say the majority opinion is imposing procedure over substance. I, however, believe these requirements have *always* been a part

---

[1] For instance, the majority opinion picks and chooses various federal cases as part of its "general review" of Rule 23(b)(3)'s predominance requirement, ostensibly because our rule is "practically identical to the Federal Rules[.]" ___ W.Va. ___, ___ n. 8, ___ S.E.2d ___, ___ n. 8 (Slip. Op. at 14, n. 8). This approach is problematic because even a cursory review of West Virginia's version of Rule 23 and the federal version of Rule 23 shows they are, in many ways, markedly different. West Virginia adopted its version of the rule in 1998, with a slight tweak in 2017; the federal rule was modified in 2003, 2007, 2009, and 2018 (*see* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Civil § 1753.1 (3rd Ed. 2020)). Plus, class actions in federal court are further confounded by the 2005 Class Action Fairness Act (PL 109-2, 119 Stat. 4, and now "codified in scattered sections of Title 28, United States Code." *Estate of Pew v. Cardarelli*, 527 F.3d 25, 26 (2d Cir. 2008). That is why this Court has often said that "[a] federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persuasive, but it is not binding or controlling." Syl. pt. 3, *Brooks v. Isinghood*, 213 W. Va. 675, 584 S.E.2d 531 (2003).

1

of this Court's class action jurisprudence, and are really nothing more than flexible guidelines for a circuit court to use to ensure a class action is the best way to resolve a case.

In the mid-1960s, Professor Arthur R. Miller[2] famously drafted the first iteration of Rule 23(b)(3) on a portable typewriter while riding in the back seat of a car. In later meetings of the Federal Rules Advisory Committee, Professor Miller explained that he and his colleagues carefully chose words for Rule 23(b)(3) that carried a "notion of generality, because, as they would frequently say, we can't see what's around the corner." Samuel Issacharoff, "An Oral History of Rule 23: An Interview with Professor Arthur Miller," 74 N.Y.U. Ann. Surv. Am. L. 105, 114 (2018).

Rule 23(b)(3) of the West Virginia Rules of Civil Procedure mirrors the 1966 version of federal Rule 23(b)(3) drafted by Professor Miller. The rule begins (with emphasis added):

> An action may be maintained as a class action if . . .
>
> (3) The court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy.

---

[2] Along with Charles Alan Wright, Professor Miller would go on to co-author *Federal Practice and Procedure*, the seminal treatise in the field of civil procedure. As part of his work in the field of civil procedure, he has represented litigants before this Court. *See State ex rel. CSR Ltd. v. MacQueen*, 190 W. Va. 695, 441 S.E.2d 658 (1994).

"Predominate" and "superior" are two of the carefully chosen words with a "notion of generality" that were written into Rule 23(b)(3), and the majority opinion is built upon them. The federal rules committee expressed concern that a class action judgment might bind hundreds of "absentee" individuals without their participation or knowledge. The rules committee settled on the word "predominate" in Rule 23(b)(3) as a guideline to protect those individuals absent from the proceedings, and they required litigants prove that a class action is "superior" to other litigation methods. According to Professor Miller, "predominance" and "superiority" means that

> you've got to get a lot of judicial bang for the buck before you certify under (b)(3). This has got to be a true efficiency economy win before you bind people with the (b)(3). It's got to be superior. God knows what that means, "superior." But it was understood to be protective. . . . *Words like "predominance" and "superiority" were like silly putty that could be molded in any way by a judge in a particular context.*

*Id.*, 74 N.Y.U. Ann. Surv. Am. L. at 116-17 (emphasis added).

Read that quote again. They guy who actually drafted the rule, and who was in the room when the rules committee debated and tweaked and adopted the rule, says the words "predominate" and "superior" in Rule 23(b)(3) are "like silly putty that can be molded in any way by a judge in a particular context."[3]

---

[3] Rule 23(b)(3) goes on to provide four other "silly putty" guidelines for the trial court's findings of fact on predominance and superiority:

> The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and

3

Back in 2003, I was the circuit judge on the receiving end of the main case discussed in the majority opinion, *In re West Virginia Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003). After this Court reversed my earlier decision, *Rezulin* was remanded to my court to be given effect. So it is fair to say: *I am intimately familiar with the case.* The

---

nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Professor Miller notes that these "Four Horsemen of the Apocalypse" are filled with "soft words" that give texture to the concepts of predominance and superiority:

> MILLER: . . . So those four things have to be written in. That encumbered the text of (b)(3) and other parts of the Rule in and of itself, and then there was a feeling that in using predominance and superiority, you have to give that some texture. And that's where the Four Horsemen of the Apocalypse are laid out in the Rule as factors to be considered by the court. The most significant in retrospect has been "manageability." Even "manageability" is a soft word that means whatever a judge might want it to mean.
>
> [Questioner]: But it's a concept which we take for granted, particularly after the '83 reforms of the federal rules, for which you were then the Reporter to the Advisory Committee. But the word comes out of nowhere at the time. . .
>
> MILLER: That was the brilliance [of the Committee] being able to find words to meet the situation, without over-crystallizing. It's no different than the decision made by the original Rules Committee not to use words like "fact," "conclusion," or "cause of action." They canonically banned those words because they had too much baggage on them. The 1960's Committee, in doing the (b)(3) thing, was grasping for words that didn't have baggage.

74 N.Y.U. Ann. Surv. Am. L. at 117.

majority opinion suggests that it is "modifying" *Rezulin* to incorporate some detailed new standard, but the fact is the majority opinion really just created a new syllabus point that emphasizes trial courts should do what they've *already been doing* under *Rezulin*: applying a Rule 23(b)(3) predominance and superiority analysis to Rule 23(b)(3) class actions.

My sense, and the sense of my colleagues, is that a class action is probably the best way to address the alleged injuries to the thousands of residents impacted by the warehouse fire. This was a massive week-long fire that consumed an entire warehouse in Parkersburg. In just the first 12 hours, firefighters pumped six million gallons of water onto the fire, much of which may have flowed back into a nearby river. The warehouse fire incinerated everything, including tons of toxic materials like PVCs, formaldehyde, and styrene, and then vented poisonous smoke into the air of the surrounding city. The fire was so extensive that the governor declared a state of emergency, and the county commission declared it a disaster.

As this Court said in *Rezulin*, when a court does a "predominance" analysis, a single common issue can outweigh many individual issues. *Rezulin*, 214 W. Va. at 72, 585 S.E.2d at 72. "The predominance analysis is a pragmatic one. It is not a numerical test . . . A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." 2 William B. Rubenstein, *Newberg on Class Actions* § 4:51 (5th Ed. 2020). Likewise, "[t]he superiority determination involves, either explicitly or implicitly, a comparison of the class action . . . as a procedural mechanism to available alternatives." *Id*. at § 4:64. *See also Principles of*

*the Law of Aggregate Litigation* § 2.02 (a court should "authorize aggregate treatment of a common issue by way of a class action if the court determines that resolution of the common issue would . . . materially advance the resolution of multiple civil claims by addressing the core of the dispute in a manner superior to other realistic procedural alternatives, so as to generate significant judicial efficiencies[.]").

When a trial court or this Court weights a Rule 23 analysis, do not let the trees blind you to the forest:

> Defendants attempting to avoid class certification will, almost exclusively, overwhelm a circuit judge with the differences between each class member's case. It is akin to a judge being asked to look at a forest of oak trees and being told the difference between each tree: each tree has a different height, a different color, a different number of leaves, a unique number of branches, a wide variation in the number and size of tree rings, and so on.
>
> The test for the judge, though, is to step back and look at the similarities in class members. Step back and see the forest. No matter the number of branches or leaves, a collection of oak trees has enough similarities to be called a "class" of oak trees. So, on remand, the judge in the instant case should do the same: focus on the class members and find their similarities.

*Gulas v. Infocision Mgmt. Corp.*, 215 W. Va. 225, 230, 599 S.E.2d 648, 653 (2004) (Starcher, J., concurring).

In this case, it is fair to say that the plaintiff's counsel did not make a detailed showing, and so the circuit court made perfunctory findings, about predominance and superiority. When this case returns to the circuit court, this Court expects the circuit court

to hold the parties' feet to the fire. In sum, the trial judge has to explain that a class action will achieve true efficiency, true economy, and a lot of judicial bang for the buck before a class action can be certified under Rule 23(b)(3).